<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SOM MAIOR AUDIO E VIDEO, LTDA., *Plaintiff*, v. CRESTON ELECTRONICS, INC. *Defendant*. | Civil No.: 20-cv-19864 (KSH) (CLW) <u>**OPINION**</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.    Introduction**

This matter arises from the termination of a distribution agreement between plaintiff Som Maior Audio E Video, Ltda. and non-party Crestron Latin America, LLC ("Crestron LA") which granted plaintiff the right to market and sell Crestron products to consumers in Brazil.  Plaintiff alleges that defendant Crestron Electronics, Inc. forced Crestron LA to terminate the distribution agreement in violation of New Jersey tortious interference law and the Brazilian Civil Code. Before the Court is defendant's motion to dismiss the amended complaint under Rule 12(b)(6). The motion is fully briefed, and the Court decides it without oral argument.

**II.    Background**

  **A.    Factual Background**

The facts are gleaned from the amended complaint (D.E. 12) and attached exhibits (D.E. 12-1, 12-2).  On November 26, 2014, plaintiff and Crestron LA executed a distribution agreement in which plaintiff agreed to purchase Crestron products through Crestron LA and then market and sell them to consumers in Brazil.  (Am. Compl. ¶ 5.)  Plaintiff complied with the

1

terms of the distribution agreement until its "sudden[]" termination approximately two years later.  (*Id.* ¶ 6.)

Plaintiff was not provided "any reasoning, cause, or justification" at the time of termination.[1]  (*Id.*)  However, Crestron LA informed plaintiff in a subsequent WhatsApp exchange that defendant Crestron Electronics—and not Crestron LA[2]—had decided to terminate the distribution agreement in favor of one of plaintiff's biggest competitors, a company called Audiogene:

> [Plaintiff]: Is it true that Audiogene is now the master distributor for Brazil?
>
> . . .
>
> [Crestron LA]: . . . [Y]es unfortunately true.  . . . We have to shut down the Brazil office and are no longer allowed to sell to Brazil in the future.
>
> [Plaintiff]: Why Audiogene and not us that were already selling and investing a lot in the last couple of years in Crestron brand?  How will be the distribution from now on?  Where are we in this deal?
>
> [Crestron LA]: [Defendant] knows Audiogene for a while.  I don't have all the answers except for the good will of Audiogene. Our investment and losses in closing the office are huge as well.

(*Id.* ¶¶ 7-8; *see* D.E. 12-2, WhatsApp Exchange.)

Plaintiff alleges that it "was required to import an abundance of inventory equipment to sell" at a time when defendant and Crestron LA knew they were going to terminate the distribution agreement.  (Am. Compl. ¶ 9.)  It also alleges that defendant "took advantage of the

---

[1] The distribution agreement granted Crestron LA the right to terminate it "for any reason, with or without cause, upon thirty (30) days advance written notice." (D.E. 12-1, Distribution Agmt. at ¶ 9.)

[2] The amended complaint does not indicate what relationship, if any Crestron Electronics shares with Crestron LA, and the Court's independent review of the distribution agreement reveals that Crestron Electronics was not a party to it.

market development and repair to the Crestron brand's reputation that [p]laintiff had done" when it "forced the termination" of the distribution agreement. (*Id.* ¶ 10.)

### B. Procedural History

In or around May 2020, plaintiff commenced a Brazilian arbitration proceeding to resolve claims against defendant and Crestron LA arising from the termination of the distribution agreement. Defendant was dismissed from those proceedings on November 30, 2020. (*See* D.E. 19-1 at Ex. A, Arb. Decision.) Approximately three weeks later on December 18, 2020, plaintiff filed its complaint in this lawsuit against defendant, a New Jersey corporation, relying on diversity jurisdiction. (D.E. 1, Compl.) In its one-count complaint, plaintiff alleged that defendant tortiously interfered with its business relationship with Crestron LA. (Compl. ¶¶ 11-16.)

Defendant moved (D.E. 8) to dismiss the complaint under Rule 12(b)(6) on February 18, 2021, arguing that plaintiff had failed to plead facts supporting an inference that the alleged interference was done with malice—a necessary element of a New Jersey tortious interference claim. Plaintiff did not oppose the motion and instead filed the amended complaint on March 10, 2021, which incorporates two additional counts alleging violations of Brazilian law—one under Article 186 of the Brazilian Civil Code (Count II), which makes it an "illicit act" to "violate the rights of and cause harm to another by an intentional, reckless or negligent act or omission"; and another under Article 421 (Count III), which prohibits a third party from interfering with the "presumption of safety in a contractual relationship." (Am. Compl. ¶¶ 22-32.) Plaintiff also revised its tortious interference cause of action by adding the following allegations:

> Defendant acted with malice in that it was dishonest, engaged in illegal conduct in violation of the Brazilian Civil Code, and had no justification or excuse for interfering with Plaintiff's business relationship with Crestron [LA] and, specifically, with the Distribution Agreement. There was no justifiable reason for

3

> [defendant] to influence Crestron [LA] to terminate its distribution relationship with Plaintiff as Plaintiff was meeting all of its goals and had successfully rehabilitated the Crestron brand in Brazil.

*(Id. ¶ 19.)*

Defendant subsequently filed the instant motion to dismiss (D.E. 19), arguing that the amended complaint is "even more frivolous" than the original complaint because it contains only threadbare allegations supporting malice, and no "alleged *facts* . . . involving any alleged fraud or otherwise illegal conduct" on the part of defendant.  It further contends that because plaintiff cannot point to any substantial difference between the New Jersey and Brazilian causes of action, New Jersey law applies to the entirety of its motion and the amended complaint must be dismissed.  Even if, defendant argues, a conflict between New Jersey and Brazilian law does exist, New Jersey law still applies in light of the "most significant relationship" test adopted by the Third Circuit.  (D.E. 19-1, Mov. Br.)

In opposition, plaintiff argues that the amended complaint contains sufficient facts to establish malice for its New Jersey tortious interference claim.  It also contends that its inclusion of Brazilian causes of action in the amended complaint does not implicate a choice-of-law issue, and attaches a declaration authored by a Brazilian attorney which documents the substantive differences between the New Jersey and Brazilian causes of action.  Plaintiff further argues that even if the Court conducts a choice-of-law analysis, the "most significant relationship" test necessitates application of Brazilian law.  (D.E. 20, Opp. Br.; D.E. 20-1, Moraes Decl.)

In reply, defendant argues that even if Brazilian law does "somehow apply," plaintiff's claims are both legally insufficient and time barred under the applicable statute of limitations. Attached to its reply brief is a declaration authored by an independent Brazilian law expert, who

opines that the amended complaint does not set forth a viable or timely claim under Brazilian law.  (D.E. 21, Reply Br.)

**III.  Discussion**

    **A. Choice-of-Law Analysis**

As a preliminary matter, the Court must determine which law applies to the instant motion to dismiss.  Plaintiff has asserted three causes of action, all of which make it unlawful for a party to interfere with the contractual rights of another.  Defendant argues that New Jersey law should govern the entirety of its motion, whereas plaintiff claims that the Court should apply the laws of both New Jersey (to Count I) and Brazil (to Counts II and III).  Accordingly, the Court will conduct a choice-of-law analysis.

    **i.  Standard**

`     "In an action based on diversity of citizenship, a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits."  *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 170 (3d Cir. 2011).  New Jersey's choice-of-law framework requires the Court to undertake a two-step inquiry.  First, the Court must "determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies."  *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011).  An "actual conflict" exists if the difference between the jurisdictions' laws would "have a significant effect on the outcome of the trial."  *Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir. 1984).  If an "actual conflict" exists, the Court must next determine which jurisdiction has the "most significant relationship" to the claim by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action."  *Snyder*, 792 F. Supp. 2d at 717 (quoting *Nikolin v. Samsung Elecs. Am., Inc.*, 2010 WL 4116997, at *3 (D.N.J. Oct. 18, 2010) (Brown, C.J.)); *see Ciecka v. Rosen*, 908 F. Supp. 2d

5

545, 552-53 (D.N.J. 2012) (New Jersey courts "apply the law of the state that has the 'most significant relationship' to the case"). When analyzing tort claims, the Court may consider: (i) the location of the injury; (ii) the location of the conduct causing the injury; (iii) the "domicile, residence, nationality, place of incorporation, and place of business of the parties"; and (iv) the location "where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws, § 145.

The Restatement clarifies that "[t]he relative importance of the contacts mentioned above varies somewhat with the nature of the tort involved." Restatement (Second) of Conflict of Laws, § 145, cmt. f. Consequently, the Third Circuit has held that "[t]he principal location of the defendant's conduct is the contact that will usually be given the greatest weight" when interpreting tortious interference with contractual relations claims. *Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*, 155 F. App'x 69, 73 (3d Cir. 2005) (quoting Restatement (Second) of Conflict of Laws, § 145, cmt. f).

      ii.      **Application**

Here, the parties dispute whether an "actual conflict" exists between the laws of New Jersey and Brazil, and have submitted dueling declarations addressing the substantive proofs required to assert viable claims under the applicable provisions of the Brazilian Civil Code. But the Court need not wade into the intricacies of Brazilian law because even if it were to determine that an "actual conflict" exists, Third Circuit jurisprudence necessitates a finding that New Jersey has the "most significant relationship" to this cause of action.

As a preliminary matter, the Court agrees with plaintiff that the first (location of injury) and fourth (relationship between parties) Restatement factors weigh in favor of applying Brazilian law—the termination of the distribution agreement "caused Plaintiff harm in Brazil"

6

and, although defendant was not a party to the distribution agreement, "if any relationship existed between the parties, it basically existed in Brazil." (Opp. Br. at 18-19.) The third factor (location of parties) similarly demonstrates at least some Brazilian interest in the lawsuit because plaintiff is a Brazilian business entity with its principal place of business located in Brazil. (*See id.* at 18; *see also* Am. Compl. ¶ 3.) But as defendant correctly argues, Third Circuit jurisprudence mandates that the Court afford the greatest weight to the second factor—*i.e.*, the "principal location of the defendant's conduct." *Integral Res. (PVT) Ltd.*, 155 F. App'x at 73. Absent any allegation to the contrary, defendant's alleged interference necessarily occurred in New Jersey where its principal place of business is located. *See id.* at 73 (applying law of defendant's residence, Ukraine, to tortious interference claim, reasoning that "the plotting, conspiracy and machinations in this case as alleged by [plaintiff] occurred in Ukraine").

Affording as it must the greatest weight to the second Restatement factor, the Court finds that New Jersey has the most significant relationship to the instant lawsuit. Accordingly, the Court will apply New Jersey law to the entirety of defendant's motion.

### B. Motion to Dismiss

#### i. 12(b)(6) Standard of Review

Having determined that New Jersey law applies to defendant's motion to dismiss, the Court will now address the motion on its merits. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all allegations in the complaint, as well as all reasonable inferences that can be drawn therefrom. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint must be viewed in the light most favorable to the plaintiff. *See Phillips v. County of Alleghany*, 515 F.3d 224, 231 (3d Cir. 2008). To survive a motion to dismiss, a plaintiff must "plead more than the

possibility of relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Accordingly, the Court will "disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago v. Warminster Twp.*, 629 F.32d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Furthermore, the Court will "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

### ii.     Tortious Interference

Under New Jersey law, a complaint based on tortious interference must allege: (i) "some protectable right—a prospective economic or contractual relationship"; (ii) "that the interference was done intentionally and with malice"; (iii) "that the interference caused the loss of the prospective gain"; and (iv) "that the injury caused damage." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52 (1989) (internal citations and quotations omitted). Furthermore, it is "fundamental" to such a cause of action that "the claim be directed against defendants who are not parties to the relationship." *Id.* at 752.

Defendant's argument for dismissal hinges on the second factor—*i.e.*, that the interference must be done with "malice."[3] State and federal New Jersey courts have consistently defined "malice" to mean that "the harm was inflicted intentionally and without justification or

---

[3] In their briefing, the parties debate whether the amended complaint asserts a cause of action for tortious interference with contractual relations or tortious interference with prospective economic advantage. Although they ultimately appear to agree that plaintiff has asserted a tortious interference with contract claim, this distinction has no bearing on the Court's analysis of the "malice" factor because "[t]he requirements for each claim are identical except that the tortious interference with contractual relations claim requires proof of an existing contract." *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003).

excuse." *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996) (quoting *Printing Mart-Morristown*, 116 N.J. at 751); *see, e.g.*, *Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552, 563 (1955) ("malice, as here used in the legal sense, simply constitutes the intentional doing of a wrongful act without justification or excuse" (internal citations and quotations omitted)); *see also Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 359 (D.N.J. 2019) ("Although the common meaning of malice connotes ill-will toward another person, . . . malice in the legal sense is the intentional doing of a wrongful act without justification or excuse" (internal citations and quotations omitted)). A defendant "claiming a business-related excuse must justify not only its motive and purpose, but also the means used." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 307 (2001). In that regard, a court will analyze "whether the conduct was sanctioned by the 'rules of the game,'" or merely constitutes "healthy competition." *Id.* at 306; *see Woods Corp. Assocs. v. Signet Star Holdings, Inc.*, 910 F. Supp. 1019, 1031 (D.N.J. 1995) (explaining that "inquiry" for determining existence of malice is "whether the defendant's interference was sanctioned by the rules of the game" (internal citations and quotations omitted)). Accordingly, the "line clearly is drawn at conduct that is fraudulent, dishonest, or illegal." *Lamorte*, 167 N.J. at 307 (citing *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 205 (App. Div. 1995)).

### iii. Application

Here, plaintiff argues that it "has explicitly explained" in paragraph 19 of the amended complaint that defendant's interference was done without justification or excuse, which is sufficient to satisfy New Jersey's tortious interference standard. (Opp. Br. at 9-10.) As a preliminary matter, any allegations in paragraph 19 that parrot the tortious interference legal standard are insufficient. *See Ragner Tech., Corp. v. Telebrands Corp.*, 2018 WL 2422012, at

\*2 (D.N.J. May 29, 2018) (Salas, J.) (dismissing tortious interference claim premised on allegations that were "mere legal conclusions that need not be credited" (*citing* Iqbal 556 U.S. at 678)). And the bare, conclusory assertion in paragraph 19—that defendant had "no justifiable reason" to interfere with the distribution agreement because plaintiff "was meeting all of its goals and had successfully rehabilitated the Crestron brand in Brazil"—does not suffice to prevent dismissal.[4] Indeed, the WhatsApp conversation attached to the amended complaint reveals a business-related justification for defendant's alleged "interference" with the distribution agreement—its prior relationship and "good will" with another company, Audiogene. Defendant's preference to conduct business with a different distributor does not establish the requisite "malice" for a tortious interference claim. *See, e.g.*, *Coast to Coast Ent., LLC v. Coastal Amusements, Inc.*, 2005 WL 7979273, at \*23 (D.N.J. Nov. 7, 2005) (Cooper, J.) (the fact that a party acted "to advance [its] own interest and financial position does not establish the necessary malice or wrongful conduct" for a tortious interference claim (quoting *Dello Russo, M.D. v. Nagel*, 358 N.J. Super. 254, 268-69 (App. Div. 2003))).

Relying on *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336 (D.N.J. 2019), plaintiff argues that it need only allege that defendant "without justification or excuse, acted out of its own self-interest" to survive a 12(b)(6) motion. (Opp. Br. at 14-15.) But in *Austar*, the minority member of a limited liability company asserted a tortious interference with prospective economic advantage claim against the defendant, a majority member and director of the

---

[4] Though not included in paragraph 19 of the amended complaint, plaintiff also claims that defendant "require[ed] [it] to import hundreds of thousands of dollars' worth of inventory when it already knew it was going to interfere and cause such termination." (Opp. Br. at 15; *see* Am. Compl. ¶ 9 (alleging that plaintiff "was required to import an abundance of inventory equipment to sell").) But Crestron LA—not defendant—was a party to the distribution agreement. Absent any allegation regarding the agency relationship between defendant and Crestron LA, defendant cannot be held accountable in tort for the actions of Crestron LA.

10

company, for forming a competing business in China in violation of his contractual obligations to the company.  In denying the defendant's motion to dismiss the tortious interference claim against him, the court found that the complaint contained "sufficient assertions of intent and malice," because it alleged that the defendant "acted out of his own self-interest *to enrich himself at the expense of his obligations to [the company.]*"  425 F. Supp. 3d at 359 (emphasis added).  Here, on the other hand, there are no factual allegations that defendant breached any contractual obligations to plaintiff such that its purported interference with the distribution agreement can be said to constitute "malice."

Having determined that the amended complaint fails to set forth a viable tortious interference claim under New Jersey law, the Court next considers whether plaintiff should be given another opportunity to amend.[5]  Where a plaintiff "has already amended [the] complaint and yet failed to allege sufficient facts" to survive a 12(b)(6) motion, courts have found that dismissal with prejudice is appropriate.  *DelRio-Mocci v. Connolly Properties Inc.*, 2009 WL 2989537, at *2 (D.N.J. Sept. 16, 2009) (Martini, J.) (internal citations and quotations omitted); *see, e.g.*, *Matias v. New Jersey*, 2009 WL 734738, at *3 (D.N.J. Mar. 18, 2009) (Cooper, J.) (dismissing complaint with prejudice where "original and amended complaints indicate that Plaintiff's allegations do not amount to a cognizable claim," reasoning that plaintiff is "unlikely to cure the deficiencies of his claims if he is allowed to amend his pleadings again").  Here, the complaint and now the amended complaint have both failed to set forth a cognizable tortious interference claim.  Accordingly, the Court finds that further amendment would be futile and dismisses the amended complaint with prejudice.

---

[5] Although plaintiff has not sought leave to amend, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss (D.E. 19) the amended complaint is granted. An appropriate order will issue.

Date: December 3, 2021                                      /s/ Katharine S. Hayden
                                                            Katharine S. Hayden, U.S.D.J.